**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2009 AUG 31 P 3: 23
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | SA09CR676XR |
| | § | |
| Plaintiff, | § | INFORMATION |
| | § | |
| VS. | § | [Vio: 18 U.S.C. § 1343, Wire Fraud; |
| | § | 18 U.S.C. § 1957, Engaging in Monetary |
| VICTOR FERNANDO GARATE, | § | Transactions in Criminally Derived |
| | § | Property; 18 U.S.C. § 2, Aiding and |
| | § | Abetting.] |
| Defendant. | | |

THE UNITED STATES ATTORNEY CHARGES:

**COUNT ONE**
**Wire Fraud**
**[18 U.S.C. §§ 1343 and 2]**

Introduction

1. The Export-Import Bank of the United States (Ex-Im Bank) was an agency of the United States headquartered in Washington, D.C. It was the official export credit agency of the United States. The mission of the Ex-Im Bank was to assist in the export of United States goods to companies in foreign countries. The Ex-Im Bank guaranteed and insured loans to foreign companies for the purchase of goods made in the United States. The Ex-Im Bank did not guarantee or insure loans to foreign companies for any purpose other than the purchase of goods made in the United States.

2. RZB Finance, LLC, New York, New York, and Toronto Dominion Bank, Houston, Texas, loaned millions of dollars to companies in Mexico based upon loan guarantees and export credit insurance of the Ex-Im Bank.

3. Defendant VICTOR FERNANDO GARATE lived in Comfort, Texas, and owned and operated Ductor, Incorporated.

4. Andrew Maxwell Parker lived in San Antonio, Texas, and owned and operated the San Antonio Trade Group, Inc., an exporter.

5. Beginning in or about February 2003 and continuing until in or about July 1, 2005, in the Western District of Texas, and elsewhere, Andrew Maxwell Parker, indicted in Cause SA-08-CR-292 FB, Defendant Victor Fernando Garate, and others, aiding and abetting one another, devised and intended to devise a scheme to defraud the lenders and Ex-Im Bank and did so to obtain money and property from the lenders and Ex-Im Bank by means of false and fraudulent pretenses, representations, and promises.

6. The scheme was to steal millions of dollars by fraudulently causing lenders to lend and causing the Ex-Im Bank to guarantee and/or insure loans through the submission of false applications and support documentation. Participants in the scheme:

   a. solicited borrowers in Mexico, identified lending institutions in the United States, and assisted borrowers in executing loan agreements which contained false information;

   b. created and solicited the creation of false documents for use in applications to lenders, knowing that in most cases the false information would be submitted to Ex-Im Bank in support of applications for insurance and/or guarantees of the loans, including bogus promissory notes, bogus invoices, and bogus bills of lading;

   c. fraudulently induced lenders to fund multi-million dollar loans to unqualified borrowers;

   d. fraudulently induced Ex-Im Bank to guarantee and/or insure multi-million

dollar loans to unqualified borrowers;

   e. fraudulently induced Ex-Im Bank to guarantee and/or insure multi-million dollar loans having nothing to do with the export of United States made goods;

   f. fraudulently induced Ex-Im Bank to guarantee and/or insure multi-million dollar loans which the Ex-Im Bank was not authorized by law to guarantee or insure;

   g. fraudulently caused multi-million dollar losses to Ex-Im Bank; and

   h. employed assumed names and nominees to launder the stolen money through financial institutions and interstate wires.

7. Defendant Garate aided and abetted Parker and others in the scheme:

   a. by soliciting borrowers in Mexico to apply for loans purportedly to be used for the export, by San Antonio Trade Group, Inc., of goods made in the United States;

   b. by assisting in obtaining false documentation to support applications to lenders, knowing that in most cases the false information would be submitted to Ex-Im Bank in support of applications for insurance and/or guarantees of the loans, including bogus promissory notes, bogus invoices, and bogus bills of lading;

   c. by assisting in using nominee bank accounts to conceal the source of loan proceeds not used for the export of goods to Mexico.

8. On or about June 2, 2004, in the Western District of Texas, Defendant,

VICTOR FERNANDO GARATE,

and others, aiding and abetting one another, having devised and intending to devise the aforesaid scheme and for the purpose of executing the scheme, and intending to do so, did transmit and cause to be transmitted in interstate commerce certain signs, signals, pictures, and sounds, that is,

the wire transfer of $1,593,755 in loan proceeds from Toronto Dominion Bank to San Antonio Trade Group for the purported purchase of greenhouse equipment on behalf of Nafarms S.A. de C.V., of Mexico.

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT TWO**
**Money Laundering**
**[18 U.S.C. §§ 1957 and 2]**

On or about April 28, 2004, in the Western District of Texas, the Defendant,

**VICTOR FERNANDO GARATE**

aided and abetted by others, did knowingly engage in and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, to wit: payment of $241,720.55 from a Frost Bank account in the name of Data Trade, Inc. to Towbin Motorcars, Las Vegas, Nevada for purchase of a 2004 Ferrari automobile for Andrew Maxwell Parker.

All in violation of Title 18, United States Code, Sections 1957 and 2.

Respectfully submitted,

JOHNNY SUTTON
United States Attorney

By: *[signature]*
JUDITH A. PATTON
Assistant United States Attorney

4